UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Brent Napier,<br><br>    Plaintiff,<br><br>    v.<br><br>Farmbox Direct Inc.,<br><br>    Defendant. | Case No.<br><br>**VERIFIED COMPLAINT** |

**JURY TRIAL DEMANDED**

Plaintiff Brent Napier ("Mr. Napier" or "Plaintiff"), by and through his attorneys Cantrell Zwetsch, P.A., as for his Complaint against Farmbox Direct Inc. ("Farmbox"), alleges as follows:

**NATURE OF THE CLAIM**

1. This is an action for declaratory and injunctive relief as to the unenforceability of blatantly ambiguous and overly broad non-competition and non-solicitation provisions of a contract between Mr. Napier and his former employer (the "Restrictive Covenants," set forth in Paragraph 23 below).

2. Specifically, Brent Napier, has received baseless threats and illusory promises from Defendant Farmbox in an attempt to ruin his opportunity with a competing company and stifle his ability to obtain any form of gainful employment with no clear business interest at stake. Over the course of Plaintiff's ten-plus year career in the sales business, opportunities to lead an organization's sales efforts in an executive Director level capacity are few and far between. When another company, Tangelo Market LLC ("Tangelo"), presented him with such an opportunity—to

1

lead as Director of Sales for its high-quality, food delivery services business within the health and nutrition market sector—it was the perfect coda to his career.

3. Upon learning of this opportunity, Farmbox offered Mr. Napier a promotion. This turned out to be a bait-and-switch, as Farmbox never fulfilled its promises. Although the new title and pay raise remained, the new duties that would come with a new title were nonexistent. It is clear that the promotion was only ever offered to block Mr. Napier's opportunity with a competitor. Rather than work out a transition for Mr. Napier to leave Farmbox before his move to Tangelo, Mr. Napier was faced with a cease-and-desist letter and threats of litigation designed to intimidate him and prevent him from ascending to the apex of his career, solely because Farmbox did not want him to leave and work for Tangelo. As a result, Mr. Napier must seek judicial intervention to protect present and future opportunities, in addition to addressing the failure of Farmbox to live up to its promises.

4. Through this action, Mr. Napier seeks a declaration that the Restrictive Covenants are invalid and preliminary and permanent injunctions against their enforcement.

## PARTIES

5. Brent Napier is a resident of Deland, Florida.

6. Farmbox is a Delaware Corporation with its principal place of business in Boston, Massachusetts.

## JURISDICTION & VENUE

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states, and the amount in controversy, including the value of the injunctive relief sought, exceeds $75,000.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and because the

parties have by contract consented to the jurisdiction of this Court.

9. Provision 11 of the Proprietary Information, Invention Assignment, Non-Solicitation and Non-Competition Agreement (the "Agreement") contains a forum selection clause stating that all parties "agree not to commence any suit, action or other proceeding arising out of or based upon any Covered Matters except in the state or federal courts located in the County of New York, State of New York." A copy of the Agreement is attached as <u>Exhibit A</u>.

### FACTUAL BACKGROUND

*a. Role at Farmbox and Non-Compete Agreement*

10. Plaintiff Brent Napier has ten years of experience in the sales industry. Over that period of time, he held positions at General Motors Financial and Humana. He has developed an extensive professional network of relationships during his time in the financial services and Healthcare sales industries and has developed a reputation as an excellent leader of sales departments.

11. Mr. Napier was hired as a "National Sales Manager" for Farmbox, a company engaged in the business of selling a grocery delivery service and nutrition education to customers throughout the United States, with a specialty in providing "organic and natural produce."[1]

12. As a part of the hiring process, on April 8, 2021, Mr. Napier signed Farmbox's Agreement.

13. The Restrictive Covenants in the Agreement were not only unlimited in geographic scope, covering the entire United States for a 1-year term post-employment, but also included two footnote questions directed at an ***unknown*** recipient as reflected in the following provisions of the agreement:

---

[1] Farmbox Direct, https://www.farmboxdirect.com (last visited April 13, 2022).

> 4. **No Competition**. During the time you are employed by the Company or any of its Affiliates, you shall not, directly or indirectly, participate, engage or assist in any Outside Engagement or Competitive Activities. [Additionally, for a period of <u>one (1) year</u> after the last day of your employment by the Company, you shall not directly or indirectly participate, engage or assist in any Competitive Activities in the United States of America.[1]]
>
> 5. **No Solicitation**. During the time you are employed by the Company or any of its Affiliates and for a period of one (1) year after the last day of your employment by the Company, regardless of the reason for such termination, you shall not directly or indirectly hire, engage, solicit or recruit any person or entity who is or was, within the prior six (6) months, an officer, employee or consultant of the Company or any of its Affiliates, or persuade any officer, employee or consultant of the Company or any of its Affiliates to terminate his, her or its officer, employment or consulting relationship with the Company or any of its Affiliates.[2]
>
> 6. **No Detrimental Conduct**. During the time you are employed by the Company or any of its Affiliates and at all times after your employment by the Company or any of its Affiliates,
>
> ---
> [1] Do you need a post-employment non-competition provision? Such a provision is not needed for all employees even if you want it for some. And for those employees for whom this will be applicable, we should discuss geographic limitations.
>
> [2] Do you want them to refrain from soliciting vendors and/or customers as well?
>
> PROPRIETARY INFORMATION AND COMPETITIVE ACTIVITIES AGREEMENT – EMPLOYEE FORM
> [Name] --Page 4
>
> regardless of the reason for such termination, you shall not directly or indirectly disparage or defame the Company, any of its Affiliates, or its or their respective businesses, operations, activities, products, services, reputation, officers, directors, managers, consultants or employees (each, a *"Protected Party"*). During the period set forth in <u>Section 4</u> during which you shall not directly or indirectly participate, engage or assist in any Competitive Activities in the United States of America, you also shall not engage in any other action, activity or course of conduct which is, or is reasonably likely to be, detrimental in any material respect to any Protected Party.

14. Notably, there are no additional provisions explaining the ambiguous provisions of the Agreement or addressing the questions embedded in the footnotes.

15. Mr. Napier began working at Farmbox in April of 2021. As a National Sales Manager, Mr. Napier was an individual contributor with no direct reports. In that capacity, his job was to pursue sales opportunities, primarily in the Medicare space working with Medicare Advantage health plans.

### b. *Disingenuous Offer of Promotion at Farmbox*

16. In November 2021, Mr. Napier was solicited by a recruiter seeking a candidate to fill a sales manager role at Intend, Inc., d/b/a/ Tangelo ("Tangelo")—a tech company that also operates in the food delivery market space. At that time, Mr. Napier provided Farmbox with the Tangelo

job description and compensation package details for competitive benchmarking provided by the recruiter. At no time did Farmbox mention any non-competition restriction, nor did anyone state that the Tangelo position would violate any terms of Mr. Napier's agreement with Farmbox.

17. On December 13, 2021, after learning of the Tangelo employment package, Farmbox offered Mr. Napier an internal promotion, via a promotion letter (the "Promotion Letter") to the Director of Managed Care Sales at FarmboxRx, an internal division of Farmbox, which was to include building out a team of three direct reports. A copy of the promotion letter is attached as Exhibit B.

18. It is important to differentiate between the two distinct types of sales roles: *Sales Manager v. Director of Sales.* The roles are distinct based upon the scope of responsibilities and level of leadership within an organization. As a Sales Manager, Mr. Napier was an individual contributor focused on prospecting for new business within his assigned territory and was ultimately responsible for setting up meetings with new prospects within the assigned territory. By comparison, as a Director of Sales, the scope becomes much broader in terms of responsibilities, leadership, access to strategy, and interface with a larger customer base. As a Director of Sales for Farmbox, he would hire and develop a team of three Sales Managers to facilitate the growth of FarmboxRx in the Medicare and Medicaid markets and would be responsible for the team's performance.

19. After Mr. Napier accepted the promotion at Farmbox, the CEO of Farmbox immediately changed course, backtracking on all the promises laid out in Mr. Napier's initial promotion letter. This blatant "bait-and-switch" tactic was designed to prevent Mr. Napier from pursuing the opportunity at Tangelo. Farmbox had no intention of allowing Mr. Napier to serve as Director of Managed Care Sales.

20. Further, Farmbox hired two vice presidents of sales between December 2021 and February 2022. On January 2, 2022, Farmbox held an executive meeting, during which one of the new vice presidents of sales, Darcy Selby, was present and not Mr. Napier, further solidifying Mr. Napier's position towards the bottom of Farmbox's sales organization as not a "high-level" employee.

    c.  *Mr. Napier's Resignation and Concerns Related to Investor Misrepresentations*

21. In or around November 2021, Mr. Napier also became aware that Farmbox was providing potential investors with materially false and misleading presentations at the direction of CEO Ashley Tyrner.

22. Specifically, Farmbox stated that it had confirmed contracts with Humana, Solutran, Central Health Plan of California, Blackhawk Network, HealthFirst, Capital Blue Cross, and Wex.

23. The inclusion of these contracts in investor presentations is materially false and misleading because none of these entities was under contract with Farmbox at the time the presentation was made. Upon information and belief, none of these entities have since contracted with Farmbox.

24. Ms. Tyrner attempted to involve Mr. Napier in these misrepresentations on January 8, 2022, by attempting to have Mr. Napier solicit Blackhawk Network. Again, Farmbox had already told potential investors that it had a signed contract with Blackhawk despite knowing it did not.

25. Mr. Napier additionally became aware of a January 2, 2022, meeting between Farmbox's senior executives to discuss the multi-million-dollar gap between the investor presentations and what was actually contracted for 2022.

26. Because of his increasing discomfort with management's truthfulness in soliciting investors, Mr. Napier resigned from Farmbox on January 12, 2022. At the time, Mr. Napier did not outline his concerns regarding the suspected fraudulent misrepresentations made to investors regarding contracts that were not yet secured. Rather, he focused on the disingenuous "promotion,"

offered by Farmbox to prevent him from pursuing the Tangelo opportunity, only to be later retracted.

    d.   **Farmbox's Tortious Interference with Tangelo Opportunity**

27. On January 12, 2022, Mr. Napier resigned from Farmbox, after receiving a formal offer from Tangelo to come on board as Director of Sales.

28. On January 17, 2022, Farmbox sent Mr. Napier and Tangelo cease-and-desist letter[s] regarding Mr. Napier's employment. A copy of the cease-and-desist letter sent to Mr. Napier is attached as <u>Exhibit C</u>.

29. The cease-and-desist was completely counter to the circumstances before and after Mr. Napier signed the Agreement. For example, in a text message between Farmbox CEO, Ashley Tyrner, and Mr. Napier's former supervisor, Erik Neilson, Ms. Tyrner indicated flippantly that she did not care if Mr. Napier or his previous counterpart Bruce Blumenfeld left to work for Tangelo, stating: "If they want to go work there, god bless them." *See* the text communication attached as <u>Exhibit D</u>.

30. In addition, Ms. Tyrner stated in at least one prior meeting in the presence of Mr. Napier and others, that Sales Managers like Mr. Napier are not subject to a non-Compete given that they are "lower-level" non-executive employees who will ultimately need to seek other employment should their tenure at Farmbox come to an end.

31. On January 18, 2022, Mr. Napier was terminated by Tangelo due to the cease-and-desist letter issued by Farmbox.

32. Since Farmbox's deliberate sabotage of Mr. Napier's employment opportunity with Tangelo, Mr. Napier has not been able to secure gainful employment.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Declaratory Relief Pursuant to the Federal Declaratory Judgment Act, 28. U.S.C.S. § 2201**

33. Mr. Napier repeats and realleges the allegations set forth in paragraphs 1 through 31 as if fully set forth herein.

34. Based on Defendant's cease-and-desist letters sent to both Plaintiff and his former employer, Tangelo, there is an actual controversy concerning whether the Restrictive Covenants contained in the Agreement are enforceable as a matter of law, and whether Defendant must abide by those provisions moving forward.

35. Defendant's actions continue to impact Mr. Napier's ability to obtain gainful employment. After retracting an offer of promotion to the Director of Sales position at Farmbox, Defendant Farmbox then blocked Mr. Napier from accepting a Director position at Tangelo based upon unenforceable Restrictive Covenants that on their face are ambiguous.

36. Declaratory judgment would serve a useful purpose in clarifying or settling the legal issues involved in this case.

37. Declaratory judgment would finalize the controversy and offer relief from uncertainty in this case.

38. Wherefore, Plaintiff demands relief in the form of a declaratory judgment finding the Restrictive Covenants of the Agreement enforceable as a matter of law, with or without appropriate modification by the Court.

### SECOND CAUSE OF ACTION

**Preliminary and Permanent Injunctive Relief**

39. Mr. Napier repeats and realleges the allegations set forth in paragraphs 1 through 37 as if

fully set forth herein.

40. Absent preliminary and permanent injunctive relief, Mr. Napier will suffer irreparable harm including, but not limited to, loss of livelihood and inability to pursue one or more business opportunities.

41. Because of the nature of Mr. Napier's lost opportunity should an injunction not issue, it will be difficult or impossible for Mr. Napier to determine, or therefore, to prove, the precise amount of damages he may suffer.

42. Wherefore, Mr. Napier requests this Court to enter preliminary and permanent injunctions preventing and restraining the Defendant and all persons acting on its behalf from (a) seeking to enforce or threatening to enforce the Restrictive Covenants, and (b) asserting or implying to third parties that by employing or otherwise engaging in business with Mr. Napier those third parties may be procuring or facilitating a breach of the Restrictive Covenants.

### THIRD CAUSE OF ACTION

*Tortious Interference with Contractual Relations*

43. Mr. Napier repeats and realleges the allegations set forth in paragraphs 1 through 42 as if fully set forth herein.

44. Mr. Napier had a contractual relationship with Tangelo in the form of employment and the economic advantages derived from that employment.

45. Farmbox became aware of Mr. Napier's employment with Tangelo.

46. Farmbox sent Tangelo a cease-and-desist letter and has threatened to initiate litigation to enforce non-competition provisions that Defendant knows are not enforceable with respect to the position of Director of Sales.

47. Defendant Farmbox's cease and desist letter and baseless threats of litigation have caused

Mr. Napier's employment as Director of Sales at Tangelo to be terminated.

48. By engaging in the above-described conduct, Defendant unjustifiably and tortiously interfered with the employment relationship from which Mr. Napier derived actual and prospective economic advantages.

49. As a result, Plaintiff has suffered, and will continue to suffer, substantial damages.

50. WHEREFORE, Plaintiff demands judgment in his favor and requests an award of compensatory damages, consequential damages, and punitive damages; attorneys' fees and costs; and such other relief as the court deems just and equitable.

## FOURTH CAUSE OF ACTION

### *Breach of Implied Covenant of Good Faith and Fair Dealing*

51. Mr. Napier repeats and realleges the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

52. Implied in all contracts, including the Promotion Letter, is a covenant of good faith and fair dealing, which is breached when a party to the contract acts in a manner that, although not constituting a breach of contract, deprived the other party to the contract the right to receive the benefit of the agreement.

53. Mr. Napier performed all his material obligations under the Promotion Letter.

54. Defendant undermined the spirit of the agreement between the parties by soliciting Mr. Napier to engage in misrepresentations made to investors in a course of business conduct that was unethical and fraudulent. Defendant, therefore, breached the implied covenant of good faith and fair dealing.

55. As a result of this breach, Plaintiff have suffered, and will continue to suffer, substantial damages.

56. WHEREFORE, Plaintiff demands judgment in his favor and requests an award of compensatory damages, consequential damages, and punitive damages; attorneys' fees and costs; and such other relief as the court deems just and equitable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Brent Napier respectfully requests that this Court enter judgment and grant the following relief:

a) A Declaration that the Restrict Covenants are invalid and unenforceable;

b) Preliminary and Permanent Injunctions preventing and restraining the Defendant and all persons acting on its behalf from (a) seeking to enforce or threatening to enforce the Restrictive Covenants, and (b) asserting or implying to third parties that by employing or otherwise engaging in business with Mr. Napier those third parties may be procuring or facilitating a breach of the Restrictive Covenants.

c) Costs of this suit;

d) An award of compensatory, punitive, statutory, and/or treble damages, costs and disbursements in this action, including reasonable attorneys' fees; and such other, further, and different relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: April 28, 2022

Respectfully submitted,

**CANTRELL ZWETSCH, P.A.**

## VERIFICATION

Brent Napier, being duly sworn, deposes and says: I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_____
Brent Napier

Sworn to before me this

28 day of April 2022., Physical Presence, FL Driver License As Identification.

_____
Notary Public

DIANA LYNN TAFOYA
Notary Public - State of Florida
Commission # HH 100579
My Comm. Expires Jun 26, 2025
Bonded through National Notary Assn.